**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KHITAM AL TAMIMI** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 12-302E** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MICHAEL J. ASTRUE, COMMISSIONER** | ) | |
| **OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

### I. *Introduction*

Pending before this court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the claims of Khitam Al Tamimi ("Plaintiff" or "Claimant") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381 et. seq. Plaintiff argues that the decision of the administrative law judge ("ALJ") should be reversed and the Commissioner directed to award Plaintiff benefits because the ALJ's determination is not supported by substantial evidence, and thus, she is entitled to SSI benefits. To the contrary, Defendant argues that the decision of the ALJ is supported by substantial evidence, and therefore, the ALJ's decision should be affirmed. The parties have filed cross motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

For the reasons stated below, the Court will deny Plaintiff's Motion for Summary Judgment and grant the Defendant's Motion for Summary Judgment, thus, affirming the ALJ's determination.

## II. *Procedural History*

On November 9, 2009, the Plaintiff protectively filed an application for SSI, alleging disability beginning January 1, 2006. On February 18, 2010, the Plaintiff received written Notice of Disapproved Claim signed by Regional Commission, Laurie Watkins (R. at 56). The Notice states that Plaintiff does not qualify for benefits because she is not disabled or blind under the rules. Id. More specifically, it was determined that Plaintiff was not disabled despite her upper and lower back problems, knee problems and depression. Id. Further it states, Plaintiff's condition is not so severe that it would prevent her from working in a stable environment. "The evidence in the file suggests that you can carry out activities of daily living independently. The severity of your condition does not prevent you from engaging in many types of work activity. . . [B]ased on your age of 46 and 13 years of education you can work." (R. at 56-57).

On March 10, 2010, Plaintiff filed a timely written request for a hearing. The hearing was held on June 12, 2011. Present at the hearing were Plaintiff, her attorney, and Mitchell A. Schmidt, an impartial vocational expert (VE). Based on evidence presented at the hearing, Administrative Law Judge (ALJ), Edward J. Banas, issued an opinion on July 8, 2011. In his opinion the ALJ found that the Plaintiff had the following severe impairments: osteoarthritis; degenerative disc disease; major depressive disorder; and post-traumatic stress disorder (PTSD). (R. at 20). However, the ALJ determined that Plaintiff was not disabled under the SSA. (R. at 26). The ALJ concluded that Plaintiff's impairments did not meet or medically equal one of the Listed Impairments found in the SSA, 20 C.F.R. Part 404, Subpart P, Appendix I, (R. at 20), and

that Plaintiff had the Residual Functioning Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), "except she should be afforded a sit/stand option, which would permit [her] to change positions occasionally, and assigned routine simple work." (R. at 22).

Plaintiff filed a July 15, 2011 Request for Review of Hearing Decision/Order with the Appeals Council (R. at 14). On October 2, 2012, the Appeals Council denied Plaintiff's request for review (R. at 1-4), making the ALJ's decision the final decision of the Commissioner of Social Security for the case. In turn, Plaintiff filed a timely civil action on December 7, 2012 requesting this Court review the decision of the Commissioner [Compl., ECF No. 3].

### III. Medical History

Plaintiff states her disability began on or about January 1, 2006, but did not file for SSI until November 9, 2009. On the Record are medical records including reports dating back as far as January 26, 2007. While it is true that the "pertinent" time period relative to the SSI benefits payment is November 9, 2009 through July 8, 2011 (the date of the ALJ decision), all medical records on the Record are pertinent to our determination of whether the Plaintiff is eligible for SSI and, therefore, will be included in our analysis. See 20 C.F.R. § 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least 12 months preceding the month in which you file your application."). Plaintiff makes claims of both mental and physical impairment. We will review each claim in turn.

#### a. Mental Impairment

An initial psychiatric exam and evaluation were performed on Plaintiff on August 13, 2007 by Stairways Behavioral Health ("Stairways"). The Plaintiff reported that she suffers from hypervigilance, avoidant behavior, frequent tearful episodes and a depressed mood in general. She reported atrocities in Iraq that have caused her to be afraid and paranoid. She can't sleep.

(R.at 279). Her Global Assessment of Functioning (GAF) was reported as a 58.[1] (R.at 281). The report is signed by Matthew L. Behan, D.O. From August 2007 through November 2007 Plaintiff saw a therapist at Stairways, including Therapist Maureen Waldman, on a regular basis to address her anxiety, sleep and depression issues as they relate to her home country of Iraq. The consults also included issues with regard to raising her three active boys (R. at 282- 97). Plaintiff, throughout her sessions, reported ups and downs in her symptoms but does report some success with managing her symptoms through medications. Id.

After a hiatus due to lack of medical insurance Plaintiff returned to therapy at Stairways (R. at 274). In a November 17, 2009 Stairways report Plaintiff complained of symptoms consistent with depression including feelings of sadness and bouts of crying, feelings of helplessness, isolation, loss of interest, low energy/motivation, low self-esteem, and erratic sleep (R. at 401). Plaintiff reported she does not eat when she is angry and sometimes she doesn't eat for days (R. at 402).

A psychological evaluation performed on December 4, 2009 states Plaintiff reports she has been depressed and anxious for quite some time but avoided seeking help in the United States because she was afraid they would take her children away (R.at 274). At this point she believes her medications need adjusting. She is having problems sleeping at night, she is isolating herself more often and socializing less, she is not eating, she is having trouble handling her children and she has nightmares relating to the wars in her country. Id. Plaintiff is diagnosed with Posttraumatic Stress Disorder (PTSD), Major Depressive Disorder, Recurrent Episode, Severe, and Chronic Back pain. She is given a GAF of 50. (R. at 275).

---

[1] The GAF rating has two components: (1) symptom severity and (2) social and occupational functioning. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the worst range of the two. A GAF score of 41-50 indicates that the individual has some serious symptoms or serious difficulty in social, occupational, or school functioning, and a GAF score of 51-60 indicates some moderate symptoms or moderate difficulty.

In another Stairways assessment dated December 30, 2009 Plaintiff reports sleep issues, depression, fearful, isolation, and auditory hallucinations. Plaintiff was also terminated from Stairways at this time due to non-compliance with procedures. (R.at 278)

On February 16, 2010 Lisa Cannon, Psy.D. performed a Mental Residual Functional Capacity (RFC) Assessment on Plaintiff (R. at 364-66) due to her Affective Disorders and Anxiety-Related Disorders. The report also notes Plaintiff's alleged physical impairments (R. at 366). Dr. Cannon reports,

> The claimant's basic memory processes are intact. She can make simple decisions. She is able to carry out very short and simple instructions. She can sustain an ordinary routine without special supervision. The limitations resulting from the impairment do not preclude the claimant from performing the basic mental demands of competitive work on a sustained basis. There are no restrictions in her abilities in regards to understanding and memory and social interaction. Based on the evidence of record, the claimant's statements are found to be partially credible. The claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment. Id.

It should be noted that on the Psychiatric Review Technique document from which Dr. Cannon worked it notes that "Major Depressive Disorder is present (R. at 370) and PTSD (R. at 372). Dr. Cannon noted a range from "none to mild to moderate" as to degree of Plaintiff's functional limitations (R. at 377). A moderate limitation was checked only for "Difficulties in Maintaining Concentration, Persistence, or Pace." Id.

Plaintiff was reinstated at Stairways and on February 19, 2010 a Stairways Behavioral Health report stated Plaintiff reported some improvement since the last visit. She rates depression 5-6/10, sleep has improved, voices have decreased, but she continues to have bad dreams related to past traumatic experiences (R.at 400)

April 6, 2010 Stairways Behavioral Health report states Plaintiff is still having difficulty falling asleep and staying asleep (R. at 398).

June 8, 2010 Stairways Behavioral Health report states Plaintiff is still having difficulty falling asleep and staying asleep (R. at 397).

July 15, 2010 according to Stairways Behavioral Health the addition of Ambien pm for sleep to Plaintiff's medicine regimen has helped and Plaintiff reports her mood is stable (R. at 396).

August 26, 2010 Plaintiff reports to Stairways Behavior Health that she is tired and does not sleep enough. She has good days and bad days. Pain in legs and back affect her mood (R. at 395).

On October 28, 2010 Plaintiff reports to Stairways Behavioral Health that she is leaving for a family visit in Iraq and that she feels pretty stable on her medications (R. at 394).

January 19, 2011 Stairways Behavioral Health reports Plaintiff is sleeping better although still has right leg and back pain. She reports her depression is up and down but she always feels anxious. She sees shadows and hears voices but her medication helped the thoughts of her hurting herself (R. at 393). Plaintiff reported at this visit she traveled to Iraq to visit her ill mother and had increased anxiety but less knee and back pain due to warm dry weather. She did not take her medicine while she was on the trip Id. Mood is stable now. Id.

A March 24, 2011 Nursing Review from Stairways Behavioral Health report Plaintiff is suffering from insomnia, difficulty falling asleep and frequent awakening. She is upset by what is going on in the Middle East – violence and it's causing anxiety and depression (R. at 392).

A March 31, 2011 report from Stairways Behavioral Health reports that Plaintiff has symptoms of depression: isolates, low energy, cries (R. at 391).

### b. Physical Impairment

On September 6, 2007 Dr. Isam A Khoja, MD reports that he is seeing Plaintiff at the request of Dr. John C. Kalata. He says Plaintiff complains of worsening right neck pain, shoulder pain

and hand and arm pain for the last 2 years (R. at 202). She has a weak grip and drops things and the symptoms are aggravated by work and by movement. Id. MRI of brain was normal. An August 20, 2007 MRI of Plaintiff's cervical spine demonstrated the presence of severe spinal stenosis at the level of C3-4, 4-5, mild to moderate at the level of 5-6, 6-7 (R. at 203, 207). She also has right paracentral disc herniation at the level of C5-6. Id. There is also hypertrophy of the posterior ligament extending from C3 down to C7. Id. The doctor recommended surgery for decompression of Plaintiff's spinal cord. Id. Plaintiff declined surgery.

On April 13, 2009 an order fulfilled at Saint Vincent Radiology Consultation for a lumbar spine x-ray showed there is minimal disc space loss at L5-S1 with some posterior element hypertrophy. Minimal scoliosis convex to the left noted. Punctate density measuring about 2 mm overlies the left kidney and may be due to superimposition of normal structures or renal stone. There is a nonspecific rounded density in the right paraspinal location at L2-3 measuring 16 mm. There is some minimal spurring anteriorly at multiple levels. The foramen are patent with some sclerosis of the pedicle at L5 on the left with some unilateral I believe spondylosis on the right (R. at 267-268; Report by Stephen Oljeski, MD).

An April 24, 2009 exam for bilateral knee pain said there is marginal osteophyte relating of medial tibial plateau right knee without other bony degenerative abnormality. All other points were normal (R. at 213). Dr. Gregg C. Mason, MD in his May 18, 2009 reports synovial impingement with medial plica band syndrome bilateral knees; left pes anserine syndrome; quite mild degenerative joint disease of each knee (R. at 214). Plaintiff reported over-the-counter ibuprofen beneficial and no follow up was requested. Id.

May 26, 2009 an MRI of the Lumbar Spine revealed minimal spondylolisthesis of L5 on S1 secondary to degenerative joint disease. Dr. Young B. Kim, MD reported degenerative bulging

disc at L4-5 and L5-S1. There is mild bilateral neural foraminal stenosis at L5-S1. There is no herniation. (R. at 216). With regard to the Cervical Spine, Dr. Kim reports normal alignment and lordosis of the cervical spine. There is mild neural foraminal stenosis on the right at C4-5 and on the left at C3-4 (R. at 217).

Plaintiff attended physical therapy with St. Vincent Rehab Solutions from October 28, 2009 to December 21, 2009 for pain during functional tasks and in particular standing at the sink and bending forward. Plaintiff complained primarily of right lower extremity symptoms described as numbness in her foot and leg that originally started in her low back (R. at 301). Plaintiff was prescribed a home program and it was recommended by M. Scott Wozniak PT, Cert. MDT, that she attends physical therapy 2-3 times per week for 4-6 weeks (R. at 300). Plaintiff noticed a positive difference from attending physical therapy (R. at 305), however, she plateaued in progress and made an appointment with a neurologist (R. at 308) in and around December 28, 2009. Plaintiff's knees are bothering her at this time (R. at 309).

On December 28, 2009 Plaintiff saw Saint Vincent Neurosurgery because she said while she was getting some relief in back pain from physical therapy, her knee and leg pain were getting worse (R. at 328). At this time a new MRI and EMG are ordered to see if her condition has worsened since the May 2009 MRI (R. at 329).

On January 8, 2010 a neurodiagnostic study was performed on Plaintiff at Saint Vincent Health Center by Daniel Muccio, MD (reporting John Sullivan, MD) (R. at 325). An electromyogram was performed on Plaintiff due to Plaintiff's complaints of pain in low back, hips, and knees. Plaintiff also reported numbness through feet. Id. Dr. Sullivan reported it was a normal study with no evidence of isolate mononeuropathy, distal peripheral polyneuropathy, or bilateral lumbosacral radiculopathy (R. at 325). Dr. Muccio states that if surgically significant

disease is confirmed by myelograms and post-myographic CAT scan of cervical and lumbar spines surgery may be warranted. (R. at 409). However, the myelogram and CAT scan revealed no abnormalities.

At a February 12, 2010 appointment with Saint Vincent Neurosurgery Plaintiff continues to note pain in her low back and pain in both lower extremities right greater than left. Her legs are numb at night (R. at 345). An MRI on January 12, 2010 revealed "[t]here is a small focal right lateral L5-S1 disc herniation. The fragment extrudes cephalad in the right lateral recess and neural foramen. Obvious nerve root impingement is not seen but I would think it might impact the right L5 nerve root if any. I see no explanation for bilateral leg pain." (Reported by Richard S. Kogan, MD; R. at 346). Dr. Daniel Muccio ordered MRI of cervical and thoracic spine to further investigate whether Plaintiff has spinal cord compression. Id.

On February 17, 2010 a Disability Determination and Transmittal was completed by Kimberly Stavish, a non-medical state agency evaluator, reporting on the Plaintiff's Physical RFC. The diagnoses noted on the document were lumbar disc degeneration and depression. (R. at 47) In this report it was determined, despite Plaintiff's complaints of chronic back and knee pain, that Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, she could stand or walk for a total of about 6 hours in an 8-hour workday, and she had unlimited ability to push or pull (R. at 49). Plaintiff was also determined to be able to occasionally climb ramp/stairs/ladder/rope/scaffolds, balancing, stooping, kneeling, crouching, and crawling (R. at 50). No other restrictions were noted.

On March 9, 2010 Plaintiff had a follow-up visit with Saint Vincent Neurosurgery where she notes pain in her low back, legs, neck and numbness in her arms and hands. She has difficulty walking and sometimes falls (R. at 407). Plaintiff discusses the results of her MRI performed on

February 19, 2010 at this appointment. The MRI revealed Moderate C3-4 stenosis. The images of the Thoracic spine revealed no issues (R. at 408). MRI of the lumbar spine showed small focal right lateral L5-S1 disc herniation (R. at 409).

April 21, 2010 Plaintiff had a follow-up visit with Saint Vincent Neurosurgery where she reported she continues to have difficulties with her neck and low back. A cervical and lumbar myelogram, postymyelographic CT scan cervical spine/postmyelographic CT scan lumbar spine was performed on March 25, 2010. Contrast in the lumbar region demonstrates a small focal right L5-S1 disc herniation. "Frankly it looks unimpressive." There are no changes from previous MRI (R. at 406). As for the cervical region, there is a degenerated bulging disc at C6-7 with a mild canal stenosis. There is degenerative disc disease C4-5. At C6-7 the disc is degenerated and there is some uncovertebral osteophyte formation with mild bilateral foraminal narrowing. No significant direct nerve root impingement or mass effect is seen. Id.

On July 21, 2010 an MRI was performed on Plaintiff's right knee. The diagnosis by Dr. Matthew Thomas, M.D. of Saint Vincent Radiology Consultation is a tear through the posterior horn of the medial meniscus superimposed on some degenerative change. Discoid lateral meniscus (R.at 418-19). Also AP and lateral views demonstrate a little narrowing of the medial joint compartment and some spurring off the medial tibial plateau consistent with some osteoarthritic or posttraumatic change (R. at 420).

Plaintiff had an arthroscopic procedure performed on her right knee by Dr. Gregg Mason, MD and subsequently attended follow-up visits at 3 weeks, 5 weeks, and 3 months post-surgery. Dr. Mason reported she was healing normally. On March 2, 2011 Plaintiff had a follow up visit with Dr. Gregg Mason, MD, 5 months after her arthroscopic procedure, and reported continued tenderness across the pes anserine region and over the distal quarter to third of the iliotibial band.

10

Otherwise the knee was doing well. She was prescribed medicine and a cane but refused physical therapy (R.at 424-29).

A May 5, 2011 list of her medications (the most recent on Record) are as follows: Flexeril, Hydrocodone Acetaminophen, Ambien, Seroquel, Celexa, and Vistaril (R. at 386-87).

On June 30, 2011 Plaintiff visited The Center for Pain management at St. Vincent for her neck and low back pain radiating to her upper legs. The course of treatment recommended is epidural steroid injection. Plaintiff left to consider the option and its side-effects (R.at 416-17).

*IV. Standard of Review*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. See 42 U.S.C. § 405(g). This court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. See id. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. See id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

## V. Discussion

Under SSA, the term "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ...

42 U.S.C. §§ 416(i)(l)(A); 423(d)(1)(A); 20 C.F.R. 404.1505. A person is unable to engage in substantial activity when he:

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled under SSA, a five-step sequential evaluation process must be applied. See 20 C.F.R. § 404.1520; McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows: At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i). At step two, the Commissioner must determine whether the claimant has a severe impairment. See id. at § 404.1520(a)(4)(ii). If the Commissioner determines that the claimant has a severe impairment, he must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, subpart p, Appx. 1. § 404.1520(a)(4)(iii). If the claimant does not have an impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent him from performing his past relevant work. See id. at § 404.1520(a)(4)(iv).

If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering his residual functional capacity and age, education and work experience. See id. at § 404.1520(a)(4)(v). See also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

In support of her motion for summary judgment, Plaintiff generally argues that the ALJ "committed errors of law in the assessment of the evidence of record regarding the plaintiff's mental and physical impairments" (Plaintiff's Brief in Support of Motion for Summary Judgment ("MSJ"), ECF No. 11). The Plaintiff supports this assertion by stating that the ALJ places improper weight on the reports of non-examining doctors and evaluators rather than paying proper deference to the examining doctors and the reports of the examining doctors. More specifically, Plaintiff states that the ALJ completely disregarded the Stairways Behavioral records dated August 2007 through April 2008 and only selectively cites to later Stairways reports. Furthermore, Plaintiff states that the ALJ relied on non-examining evaluator reports that were developed before doctor appointments that yielded significant results in the Plaintiff's case. Therefore, the Plaintiff finds the ALJ's opinion that opinions of the non-examining state agency sources are well supported by the record as a whole is unfounded. Id. at 15.

In response to Plaintiff's arguments, Defendant generally alleges that the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence on the record as a whole. Defendant further argues that substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints are not entirely credible. (Defendant's Brief in Support of MSJ, ECF No. 13). Defendant next argues that substantial evidence supports the ALJ's reliance on the Mental and Physical Residual Functional Capacity (RFC) Assessments that Plaintiff had some mild limitations in restrictions of daily living and difficulties in social functioning,

moderate difficulties in maintaining concentration, persistence, but that she could perform simple, routine work on a sustained basis despite her limitations and with certain accommodations. Id. at 5.

In response to Defendant's arguments, Plaintiff filed a reply brief. (Plaintiff's Reply Brief in Support of MSJ, ECF No. 14). Plaintiff re-alleges that the Commissioner did not properly evaluate all the evidence of record and did not apply the more rigorous standard required when using a non-examining source's opinions. Id. at 8.

To supplement the discussion stated above, on June 21, 2011 a hearing was held by Edward Banas, an Administrative Law Judge (ALJ). The hearing included Plaintiff and her attorney and a vocational expert (VE), Mr. Mitchell A. Schmidt. (R. at 28-46). Based on Plaintiff's diagnosis of depression, anxiety and pain the VE said the symptoms of these afflictions could affect a person's ability to maintain pace, persistence, concentration, and attention sufficient to maintain even an unskilled occupation. It could also affect a person's attendance and punctuality. (R. at 42). In turn, a person affected in these ways could not maintain competitive employment. (R. at 43). The ALJ presented the VE with a hypothetical taking into account Plaintiff's scenario:

ALJ: If we have a hypothetical individual, a younger individual with a high school education, no past relevant work and assume [the person would complain of problems cited above], the person would be capable of performing work activity at a sedentary, as well as light level of exertion, as defined in the Dictionary of Occupational Titles, provided that any jobs would entail a sit stand option, the job would permit the person to occasionally change positions for relief of postural discomfort. Also the jobs would just consist of routine simple task, with those limitations, could you identify jobs that this person might be able to do? (R. at 43)

VE: Yes. At the light duty exertional level, such a hypothetical individual could perform the occupation of a sorter of agricultural produce such as apples. . .fruit cutter . . . nut sorter . . . cuff folder. (R. at 43-44).

The VE also responded to Plaintiff's attorney's questions by saying that the worker must behave in an emotionally stable way, and could not take unpredictable work breaks to lie down for fifteen minutes or so outside of lunch or scheduled work breaks. (R. at 45).

The District Court's role is limited to determining whether substantial evidence exists in the record to support the ALJ's findings of fact. See Burns, 312 F.3d at 118.

### *Whether the ALJ Erroneously Evaluated the Medical Evidence*

As the finder of fact, the ALJ is required to review, properly consider, and weigh all of the medical records provided concerning the Plaintiff's claims of disability. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) (citing Dobrowolsky v. Califano, 606 F.2d 403, 406-07 (3d Cir. 1979)). "In doing so, an ALJ may not make speculative inferences from medical reports." Plummer v. Apfel, 186 F.3d 422, 429 (3d. Cir 1999). When the medical evidence of records conflicts, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id. (quoting Mason v. Shalala, 944 F2d 1058, 1066 (3d. Cir. 1993)). Moreover, the ALJ must consider all the evidence and give some reason for dismissing the evidence he chooses to reject. See id. (citing Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir. 1983)).

#### a. Whether the ALJ Gave Proper Credit to the Evidence of Record

According to Plaintiff, the Commissioner made various mistakes with respect to analyzing the medical evidence. Plaintiff states that the Commissioner simply ignored or selectively credited the opinions of Plaintiff's treating mental health sources at Stairways Behavioral Health, while at the same time relying on the opinions of non-medical evaluators without applying the more rigorous standards for non-examining evaluators. (Plaintiff's Brief in Support of MSJ at 11). Further, the Plaintiff determined that the non-examining medical

evaluators did not rely on the examining reports available to them, thus, making their evaluations unreliable.

Plaintiff cites to the many medical records available on the Record from Plaintiff's treating sources that repeatedly provide support that Plaintiff is suffering from various mental and physical ailments, which include depression, anxiety, sleep deprivation, PTSD, and anger, back and spinal degenerative indications and pain. Plaintiff notes a cursory review by the ALJ of the reports. Namely, Plaintiff states that the ALJ selectively cites to portions of the Record that support his conclusions without noting contrary evidence that was often present in the same report. Id. at 13.

The Commissioner responds to the allegations by Plaintiff by stating that the ALJ's conclusions are supported by the overall evidence of record, including Plaintiff's unremarkable mental health treatment records, activities and statements, and the state agency psychologist's opinion. (Defendant's Brief in Support of MSJ at 10). Here the ALJ supports his determination that during Plaintiff's psychiatric evaluation, "she exhibited adequate eye contact, spontaneous speech at a regular rate and rhythm, logical and coherent thought process, fair judgment and insight, and appeared to have no memory impairment. Id.; (R. at 275). ALJ cited to several excerpts from reports over the course of her treatment at Stairways that consistently showed that she had normal speech, behavior, judgment, and insight, and normal or only "slightly elevated" anxiety. Id.; (R. at 277, 344, 391-98, 400). In summary, the Commissioner states the ALJ reviewed the entire record in this case, including the later treatment records from Stairways, and reasonably found they did not support a finding of disability. Id. at 12; (R. at 20-25).

It is our opinion that the ALJ reviewed the record and properly acknowledges that Plaintiff's diagnoses of PTSD, and major depressive disorder and noted a GAF score of 50

indicating Plaintiff has some serious symptoms or serious difficulty in social, occupational, or school functioning. Id. at 4. Further, the ALJ takes note of diagnoses of degenerative problems of the spine and knee. (R. at 20). There is no indication that the ALJ discounted the evidence on the Record that Plaintiff does, indeed have the diagnoses repeatedly reported in her evaluations, nor does he discount that she suffered from the symptoms of said diagnoses. However, he does balance those findings, determinations and diagnoses with other findings of fact on the Record and supporting documentation of Plaintiff's ability to work despite her physical and mental issues. The ALJ need not repeat the evidence of Record to confirm he has read and accounted for it every time he notes evidence of record that supports a finding that Plaintiff is not disabled. The ALJ takes into account those things on the Record that play a role in determining the Plaintiff's ability to work in the economy and there is no reason to believe he did not take into account the Record in its entirety. He is neither at fault nor in error to bring evidence to our attention that supports a finding that Plaintiff is not disabled according to the standards set forth by the SSA. It is a factual statement to say that there is evidence on the Record that undermines a determination of disability for Plaintiff. To have each party recount the opposing information each time a point is made is unnecessary. It is our opinion that substantial evidence that a reasonable mind might accept as adequate supports the findings of the Commissioner.

We take note here that despite the voluminous accounts of Plaintiff's inability to sleep, and her depression and anxiety we have no argument of record by examining physicians to counter the determinations of the non-examining evaluators that Plaintiff is able to work under certain conditions conducive to her diagnoses. Plaintiff cites to cases that say the ALJ may not speculate on the silence of the examining doctors with regard to Plaintiff's functional capacity. (Plaintiff's Reply Brief at 12). While speculation is not acceptable, as a practical matter, without

support on the Record of Plaintiff's functional limitations due to her diagnosed ailments by the examining physicians, we must rely on the evidence that is present on the Record which do opine on Plaintiff's ability to work.

### b. Whether the ALJ Gave Improper Weight to Non-Examining Evaluators

"Generally, more weight is given to the opinions of an examining source than to the opinions of a non-examining source and even more weight is generally given to the opinions of a treating source." (Plaintiff's Brief in Support of MSJ at 14 (citing 20 C.F.R. 416.927(c)(1), (2)).

> The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter or standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources. . . (Social Security Ruling 96-6p)

Plaintiff argues that the ALJ gave "significant weight" to the opinion of Lisa Cannon, Psy.D., a state agency psychological consultant (Plaintiff's Brief in Support of MSJ at 10; R. at 24). Plaintiff argues that the ALJ cannot attribute significant weight to Psychologist Cannon's Mental RFC report, which states that, "[T]he claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment" (R. at 366), as she was not an examining doctor and her report only is substantiated by two notes of Plaintiff's most recent visits to Stairways in December of 2009 and January 27, 2010. There is no mention of the Stairways reports that pre-date or post-date Psychologist Cannon's report and even though the January 27, 2010 report shows improvement in the Plaintiff's symptoms, later assessments indicate Plaintiff continues to struggle with symptoms. Plaintiff argues that the ALJ's assertion that the opinion of Dr. Canon is "well supported by the record as a whole," is ludicrous when she only briefly cites to two medical records.

The ALJ in his "Findings of Fact and Conclusions of Law" supplements Psychologist Cannon's RFC by stating that limitations identified in his analysis criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. Thus, the RFC assessment by the ALJ reflects the degree of limitation he found when using the criteria of limitations identified in "paragraph B" of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p) (R. at 21). Using this analysis and in consideration of the entire record, the ALJ found that the Plaintiff has the mental RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except she should be afforded a sit/stand option, which would permit the Plaintiff to change positions occasionally, and assigned routine simple work. (R. at 22). The ALJ stated he finds that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent they are inconsistent with the stated RFC. Id.

Plaintiff also argues that the ALJ erroneously found the Physical RFC Assessment of non-examining state agency source, Kimberly Stavish, to be persuasive in that the claimant is capable of some type of work. (Plaintiff's Brief in Support of MSJ at 22). Plaintiff argues that the ALJ erred in giving this report "great weight." "A state agency disability examiner can make a disability determination alone only when there is no medical evidence to be evaluated." Id. at 20 (citing 20 C.F.R. § 416.1015(c)(2)). However, Ms. Stavish noted in her report several different medical findings regarding Plaintiff's ailments beginning with the x-ray of Plaintiff's cervical spine showing multilevel degenerative changes on January 26, 2007 through February 12, 2010 which provided a neurology examination with no irregular findings. Ms. Stavish cited

to a total of 8 medical reports. (R. at 53-54). Also in this report is a narrative of the Plaintiff's description of her daily activities as significantly limited. Ms. Stavish reports that this is consistent with the limitations indicated by other evidence in this case. She determines Plaintiff's statements to be "partially credible." (R. at 54).

The ALJ counters Plaintiff's arguments against his using non-examining sources as support for his conclusions by asserting that his reliance on the sources available on the Record was appropriate. "[T]he [mental] RFC assessment was consistent with Dr. Cannon's opinion. In sum, . . . the ALJ's mental RFC assessment was supported by the overall record evidence." (Defendant's Brief in Support of MSJ at 11). Further, "Under the regulations, the responsibility for determining the claimant's RFC is reserved exclusively to the Commissioner" See 20 C.F.R. §§ 416.927(d)(2), (d)(3); Id. at 13. "The ALJ was required to consider and entitled to rely on the state psychologist because she is an expert in disability and her opinion was consistent with the record evidence." Id.; See also Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d. Cir. 2011). The Plaintiff asserts that the ALJ "relies upon no opinion from a medical source which supports his physical RFC determination (R. at 24). However, as noted above, Ms. Stavish's report does document at least 8 entries from medical reports from the record. The Commissioner states that the ALJ reviewed the entire record in this case, including the later treatment records from Stairways, and reasonably found that they did not support a finding of disability. (R. at 20-25).

It is the opinion of this Court that the ALJ did not err in its evaluation of the evidence of record and applied appropriate deference to the reporting sources. There is evidence in the ALJ's evaluation that all records were reviewed and his reliance on certain sources is supported

and substantiated by other evidence of Record. Again it is our opinion that substantial evidence of record supports the Commissioner's findings.

### c. Whether the ALJ Erroneously Rejected Plaintiff's Testimony concerning her activities of daily living and improperly determined Plaintiff's Credibility.

The ALJ found Plaintiff's statements and activities undermine her claim that her limitations created disabling functional limitations. (Defendant's Brief in Support of MSJ at 10). "Plaintiff reported to [Stairways] that she was not seeking work and that she had enough work to do at home caring for her children (R. at 281). She also performed a number of daily activities such as preparing meals, doing chores, and shopping for household items." (Defendant's Brief in Support of MSJ at 11). The ALJ also noted that Plaintiff was able to travel to Iraq during the period at issue. Id. at 1. Plaintiff is able to drive a car.

Plaintiff testified at her hearing that, due to pain, she can stand no more than 10 minutes, can sit for no more than 30 minutes, can lift no more than 10-15 pounds, and that in addition to taking pain medication, she needs to lay down for pain relief repeatedly during the day (R.at 36-37).

This Court agrees with the ALJ in that the medical record does not support Plaintiff's subjective reporting of her limitations and, thus, we agree that there is substantial evidence in the record to support the ALJ's determination that Plaintiff is only partially credible.

*VI. Conclusion*

For the foregoing reasons, we conclude that there is substantial evidence existing in the record to support the Commissioner's decision that Plaintiff is not disabled, and that there is appropriate work in the national economy that would suit Plaintiff and accommodate her needs. Therefore, the Plaintiff's Motion for Summary Judgment is denied and the Defendant's Motion for Summary Judgment is granted.

An appropriate order will be entered.

Date *September 16, 2013*    Maurice B. Cohill, Jr.
Senior United States District Court Judge

cc:    counsel of record